1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEANE HEEKYUNG NOH,

                Plaintiff,

     v.

UNITED STATES OF AMERICA,

                Defendant.

CASE NO. 2:25-cv-01483-LK

ORDER DENYING MOTION FOR
RECONSIDERATION AND
DISMISSING COMPLAINT

     This matter comes before the Court on Plaintiff Jeane Heekyung Noh's Motion to Reconsider Filing Fee or Authorize Refund. Dkt. No. 14. For the reasons set forth below, the Court denies the motion and dismisses the complaint with leave to amend.

## I.    BACKGROUND

     On August 1, 2025, Ms. Noh filed her proposed pro se complaint, Dkt. No. 1, and subsequently paid the filing fee, *see* August 11, 2025 Docket Entry. In her complaint and its lengthy attachment, she alleges that Defendants—which include the United States and several of its agencies—violated her rights by engaging in "wrongful and harmful surveillance and targeting of Plaintiff." Dkt. No. 5 at 1–2; Dkt. No. 5-1 at 11. She has also named as Defendants the Kittitas

ORDER DENYING MOTION FOR RECONSIDERATION AND DISMISSING COMPLAINT - 1

County Sheriff's Office, Kittitas Valley Healthcare, Comprehensive Healthcare, Targeted Justice, and the International Association for Near Death Studies. Dkt. No. 5-1 at 11–12. She asserts a claim under 42 U.S.C. § 1983 based on Defendants' alleged violation of 39 constitutional rights and federal statutes. *Id.* at 3–7.

On August 12, 2025, Ms. Noh filed a motion for "[w]aiver of the $405 filing fee under the Court's equitable authority" and appointment of pro bono counsel. Dkt. No. 6 at 1. The Court denied the motion, explaining that "[d]istrict courts generally lack authority to waive pro se plaintiffs' filing fees after they have been paid because there is no statutory basis for returning a filing fee." Dkt. No. 10 at 2. However, the Court noted that "there is a mechanism to waive the filing fee for indigent litigants" and explained that procedure. *Id.* Ms. Noh subsequently filed this timely motion for reconsideration. Dkt. No. 14.

## II.    DISCUSSION

### A.    The Court Denies the Motion for Reconsideration

Motions for reconsideration are disfavored under the local rules, and the Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCR 7(h)(1); *see also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (noting that reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources" (citation modified)). Movants are required to "point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCR 7(h)(2). A motion for reconsideration does not "provide litigants with a second bite at the apple." *Stevens v. Pierce Cnty.*, No. C22-5862 BHS, 2023 WL 6807204, at *2 (W.D. Wash. Oct. 16, 2023).

Ms. Noh requests that the Court "reconsider its denial of her request for a refund of the $405 filing fee, not on the basis of indigency or eligibility for in forma pauperis (IFP) status, but due to the duplicative nature of the fee in light of a prior, substantively identical case." Dkt. No. 14 at 1. She also notes that she has "reached out to and been declined by dozens of civil rights attorneys," a fact which she "inadvertently omitted" from her motion to appoint counsel. *Id.* at 2.

Reconsideration is not warranted here. Although Ms. Noh asserts that paying the filing fee in both of her cases is duplicative, the Court previously explained that there is no statutory basis for returning the filing fee now that she has paid it. Dkt. No. 10 at 2. Although seeking IFP status could have provided her with a mechanism to recoup the filing fee, Ms. Noh has declined to seek IFP status. *See* Dkt. No. 14 at 1. Ms. Noh has not shown that the Court erred, nor does she cite any new facts or relevant legal authority.

Ms. Noh has not demonstrated that the Court erred in denying her request for appointment of counsel either. Although the fact that she has reached out to dozens of attorneys to represent her is relevant, her "inadvertent[]" omission of that information from her original motion, Dkt. No. 14 at 2, does not show that it "could not have been brought to [the Court's] attention earlier with reasonable diligence," LCR 7(h)(1). Regardless, even if the Court were to now consider that she contacted dozens of attorneys without success, Ms. Noh still would not demonstrate the existence of exceptional circumstances warranting the appointment of counsel for all of the other reasons set forth in the Court's prior Order. *See* Dkt. No. 10 at 4–5. Accordingly, the Court denies her motion for reconsideration, Dkt. No. 14.

**B.    The Court Dismisses the Complaint**

1.    <u>The Allegations in the Complaint</u>

Ms. Noh's 42-page complaint names 12 Defendants and asserts that the Court has jurisdiction under 42 U.S.C. § 1983 based on the violation of 39 Constitutional provisions, federal

1    statutes, declarations of rights, and conventions. Dkt. No. 5-1 at 1–7.

2         Ms. Noh alleges that since 2011, she "has been wrongfully and egregiously targeted by the

3    U.S. government" with "harmful covert technologies, including nanotechnology, for

4    bodily/biometric surveillance by U.S. intelligence agencies, along with other egregious tactics, in

5    coordination with other federal and local authorities." Dkt. No. 5-1 at 15. Specifically, she alleges

6    that she may have been surveilled by her college roommates, by someone she met through a dating

7    service, and by "undercover federal agents" over the years. *Id.* at 15–17. Beginning in 2021, she

8    began to experience "stalking from numerous unknown individuals whenever she left her

9    residence" as well as unexplained noises emanating from her walls, appliances, and belongings on

10   a daily basis. *Id.* at 18. She also contends that Michael Stork, "a possible undercover

11   agent/informant, . . . was an active participant in her surveillance and the directed energy attacks

12   she endured." *Id.* at 20. She does not contend that Stork worked for any of the Defendants.

13        Ms. Noh "visited the FBI Seattle Field Office on 12/18/2021, and spoke with Special Agent

14   Williamson, who dismissed her frantic concerns about surveillance believed to be from North

15   Korea." *Id.* at 18. Her efforts to obtain help from other federal agencies were similarly

16   unsuccessful. *Id.* at 18, 29. She also requested assistance from the Kittitas Sheriff's Office but was

17   ignored. *Id.* at 22, 24–25. Ms. Noh contends that her health care providers "were acting in

18   coordination with the FBI/CIA, etc." *Id.* at 19. She further contends that two deputies—possibly

19   from the Kittitas County Sheriff's Office—"attempted to forcibly remove [her] from her home and

20   take her to the Kittitas Valley Hospital against her will" in 2024. *Id.* at 25. Another deputy lodged

21   a false complaint against her. *Id.*

22        Among other relief, Ms. Noh seeks injunctive relief "to prevent any further harm, including

23   from surveillance devices and technologies, retaliation, or unlawful surveillance from occurring

24

ORDER DENYING MOTION FOR RECONSIDERATION AND DISMISSING COMPLAINT - 4

against Plaintiff and family members," leave to conduct discovery and obtain surveillance records, and monetary damages. *Id.* at 32–41.

2.   <u>The Complaint Does Not Plausibly Allege Subject Matter Jurisdiction or State a Claim</u>

Federal courts are courts of limited jurisdiction, and they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This means that the Court can only hear certain types of cases, *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437–38 (2019), including those that present a federal question "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. The Court must dismiss the action if it "determines at any time that it lacks subject-matter jurisdiction" over a case. Fed. R. Civ. P. 12(h)(3). The party asserting jurisdiction has the burden of establishing it. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). "Absent a substantial federal question," a district court lacks subject matter jurisdiction, and claims that are "wholly insubstantial" or "obviously frivolous" are insufficient to "raise a substantial federal question for jurisdictional purposes." *Shapiro v. McManus*, 577 U.S. 39, 45–46 (2015); *see also Bell v. Hood*, 327 U.S. 678, 682–83 (1946). In addition, the "mere mention of 42 U.S.C. § 1983 and particular constitutional provisions does not establish jurisdiction where the complaint on its face discloses the absence of an essential element of such a claim." *See Taylor v. Lai*, No. C13-1425-JLR, 2013 WL 6000068, at *3 (W.D. Wash. Nov. 12, 2013) (citation modified).

Although the Court construes pro se complaints liberally, *see Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003), such complaints must still include "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought," Fed. R. Civ. P. 8(a). A plaintiff's pro se status does not excuse compliance with this bedrock requirement. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000)

1    (explaining that the lenient pleading standard does not excuse a pro se litigant from meeting basic

2    pleading requirements); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (although the court

3    has an obligation to liberally construe pro se pleadings, it "may not supply essential elements of

4    the claim that were not initially pled" (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673

5    F.2d 266, 268 (9th Cir. 1982))). Rule 8(a)'s standard "does not require 'detailed factual

6    allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

7    accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

8    U.S. 544, 555 (2007)).

9         To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

10   (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that

11   the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*,

12   487 U.S. 42, 48 (1988). Accordingly, a plaintiff must first identify the specific right allegedly

13   infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). And second, a plaintiff must allege facts

14   showing how each defendant caused, or personally participated in causing, the harm alleged in the

15   complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

16        Although Ms. Noh names several government agencies as Defendants, Dkt. No. 5 at 4, "a

17   federal agency is not a 'person' within the meaning of [Sections 1983 and 1985]." *Jachetta v.*

18   *United States*, 653 F.3d 898, 908 (9th Cir. 2011). Even if Ms. Noh is bringing a standalone claim

19   under the Federal Tort Claims Act ("FTCA"), Dkt. No. 5-1 at 5, the United States has not waived

20   its sovereign immunity for constitutional tort claims against it or its agencies, which means that

21   courts lack subject matter jurisdiction over such claims, *see FDIC v. Meyer*, 510 U.S. 471, 477–

22   78 (1994). Additionally, the only proper defendant for an FTCA claim is the United States; "an

23   agency itself cannot be sued under the FTCA." *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

24

1    The Court therefore dismisses Ms. Noh's Section 1983, Section 1985, and FTCA claims against

2    the "FBI, DOJ, CIA, NSA, ODNI, DoD, [and] DHS" with prejudice. Dkt. No. 5 at 4.

3          The Court also dismisses Ms. Noh's *Bivens* claims against these agencies. *See* Dkt. No. 5-

4    1 at 7–11. "*Bivens* created a remedy for violations of constitutional rights committed by federal

5    officials acting in their individual capacities." *Consejo de Desarrollo Economico de Mexicali, A.C.*

6    *v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "[A] Bivens action can be maintained against

7    a defendant in his or her individual capacity only, and not in his or her official capacity." *Daly–*

8    *Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir. 1987). Thus, a plaintiff may not bring a *Bivens*

9    claim against a federal agency such as the FBI. *Meyer*, 510 U.S. at 484–85. Accordingly, the Court

10   dismisses Ms. Noh's *Bivens* claims against the federal agencies with prejudice.

11         Furthermore, to the extent that Ms. Noh's claims are premised on the notion that the FBI

12   had a duty to help her combat the alleged surveillance and stalking, she has not identified a legal

13   basis for such assistance. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189,

14   196–97 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental

15   aid, even where such aid may be necessary to secure life, liberty, or property interests of which the

16   government itself may not deprive the individual"; accordingly, "a State's failure to protect an

17   individual against private violence simply does not constitute a violation of the Due Process

18   Clause."); *Piechowicz v. United States*, 885 F.2d 1207, 1214 n.9 (4th Cir. 1989) (holding that

19   *DeShaney* "applies equally in a suit against the United States, given the Supreme Court's

20   essentially identical interpretations of the concept under the [Fifth and Fourteenth]

21   [A]mendments"); *see also Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)

22   (discussing when the discretionary function exception bars a suit for tortious conduct against the

23   government).

24

Although Ms. Noh lists numerous criminal statutes in her complaint, Dkt. No. 5-1 at 4–6, criminal provisions provide no basis for civil liability, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). She also lists numerous other statutes, executive orders, constitutional provisions, and other legal sources without any facts to plausibly allege a claim under these sources. *Id.* at 3–7. These "wholly insubstantial" claims are insufficient to "raise a substantial federal question for jurisdictional purposes." *Shapiro*, 577 U.S. at 45–46 (citation modified).

Other allegations are similarly deficient. If Ms. Noh intended to bring a standalone claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, she has not stated a claim under that statute. She contends that her June 2024 request for surveillance records was denied and other requests "have either gone unaddressed or resulted in the return of insufficient or incomplete information," Dkt. No. 5-1 at 23, but she fails to allege necessary elements of her claim, including which Defendant(s) allegedly withheld documents, what she sought, or that she exhausted her administrative remedies as required. *See, e.g.*, *Dewey v. Sup. Ct. of Cal., Cnty. of Ventura*, No. CV 21-9834-VBF (PLA), 2022 WL 541326, at *5 (C.D. Cal. Feb. 23, 2022) (finding that "plaintiff's facts pertaining to any plausible FOIA claim are so insufficient and unsubstantial as to lack an arguable basis in either law or fact" when she failed to set forth "the specific information she sought in which FOIA request to what agency at what time").

Ms. Noh's complaint lists several non-governmental entities as Defendants, Dkt. No. 5-1 at 2–3, but she does not allege that these entities were acting under color of state law. *See, e.g.*, *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002) ("Section 1983 liability extends to a private party where the private party engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States."). Rather, she contends that they were acting under color of federal law, surveilling her "under the direction or collaboration with federal intelligence

1    agencies[.]" Dkt. No. 5-1 at 11–12. She has therefore failed to state a Section 1983 claim against

2    Kittitas Valley Healthcare, Comprehensive Healthcare, Targeted Justice, and the International

3    Association for Near Death Studies, and the frivolous claim against them does not establish subject

4    matter jurisdiction.

5        Ms. Noh further contends that two deputies "attempted to forcibly remove [her] from her

6    home and take her to the Kittitas Valley Hospital against her will" in 2024, Dkt. No. 5-1 at 25, but

7    she does not allege what government entity they worked for, that they were acting under color of

8    state law, or that they violated a right secured by the Constitution or laws of the United States (and

9    if so, which right). Accordingly, these allegations do not state a claim either. In what could be a

10   related claim, Ms. Noh sues the Kittitas County Sheriff's Office for its alleged "involvement in

11   her surveillance, attempt of wrongful detention, attempt to bring false charges at county court, and

12   negligence of her harm have been carried out in cooperation with federal agencies/agents," Dkt.

13   No. 5-1 at 11, but she does not elaborate on these claims or tie them to a legal claim, *id.* at 25. In

14   addition, the Kittitas County Sheriff's Office is not a proper defendant because it is not a

15   municipality. *See, e.g.*, *Wright v. Clark Cnty. Sheriff's Off.*, No. 3:15-CV-05887-BHS-JRC, 2016

16   WL 1643988, at *2 (W.D. Wash. Apr. 26, 2016) ("A governmental agency such as the Clark

17   County Sheriff's Office normally cannot be sued under § 1983 because it is not a municipality.").

18   If sufficient facts are alleged, the proper defendant would be Kittitas County, which is a

19   municipality that can be sued under § 1983. However, where a plaintiff seeks to impose liability

20   on a municipality such as a county, the plaintiff must allege that the employee who committed the

21   constitutional violation was "acting pursuant to an expressly adopted official policy, longstanding

22   practice or custom, or as a final policymaker." *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170

23   (9th Cir. 2014). Ms. Noh does not allege these elements regarding the Kittitas County Sheriff's

24   Office (or the county itself).

1    For all of these reasons, the Court dismisses the complaint for lack of subject matter

2    jurisdiction and failure to state a claim.

3    3.    The Court Grants Leave to Amend

4    The Court is mindful that "[u]nless it is absolutely clear that no amendment can cure the

5    defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity

6    to amend prior to dismissal of the action." *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir.

7    1995). Because amendment *may* be possible with respect to certain claims, the Court grants Ms.

8    Noh leave to file an amended complaint. However, this Order limits Ms. Noh to the filing of an

9    amended complaint that attempts to cure the specific deficiencies identified in this Order. She may

10   not reallege her dismissed Section 1983, *Bivens*, and criminal claims against the federal agencies;

11   those claims are dismissed with prejudice. If Ms. Noh chooses to file an amended complaint, she

12   must clearly identify the basis for this Court's subject matter jurisdiction.

13   The filing of an amended complaint will supersede all previous complaints. *See Ferdik v.*

14   *Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (noting the "well-established doctrine that an

15   amended pleading supersedes the original pleading"). Any amended complaint must clearly set

16   forth the "who, what, where, when, and why" necessary for the Court and Defendants to

17   understand what Ms. Noh is alleging. *See* Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678. In other

18   words, each cause of action must identify the specific law that was allegedly violated, which

19   Defendant(s) violated it and how, when the alleged violation occurred, and how the alleged

20   violation harmed Ms. Noh.

21   **III.    CONCLUSION**

22   For the foregoing reasons, the Court DENIES Ms. Noh's Motion to Reconsider Filing Fee

23   or Authorize Refund, Dkt. No. 14, and dismisses the complaint with leave to amend some claims

24

as set forth in this Order. If Ms. Noh does not file an amended complaint within 21 days of the date of this Order, the Court will close this case.

Dated this 3rd day of November, 2025.

Lauren King
United States District Judge